# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

KATHLEEN MARIE COURTNEY,   )
                               )
       **Plaintiff,**         )
                               )
**v.**                           )     Case No. CIV-20-354-P
                               )
**ANDREW M. SAUL,**        )
  **Commissioner of the**      )
  **Social Security Administration,**   )
                               )
       **Defendant.**      )

## ORDER

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. For the following reasons, Defendant's decision is affirmed.

## I.  Administrative History and Final Agency Decision

Plaintiff protectively filed her applications for disability insurance benefits and supplemental security income on June 9, 2016. AR 217-26, 227-30. Plaintiff alleged she became disabled on May 2, 2015, and later amended that date to May 1, 2015. AR 219, 227, 231. The Social Security Administration denied Plaintiff's

applications on September 28, 2016, *see id.* at 63, 64, 65-78, 79-92, and on reconsideration on March 8, 2017. AR 93, 94-110, 111-27, 128.

Plaintiff appeared with counsel and testified at an administrative hearing conducted before an Administrative Law Judge ("ALJ") on June 21, 2018. AR 43-62. A vocational expert ("VE") also testified at the administrative hearing. AR 58-61. The ALJ issued a decision in which he found Plaintiff was not disabled within the meaning of the Social Security Act. AR 7-19.

Following the agency's well-established sequential evaluation procedure, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 1, 2015, the alleged onset date. AR 12. At the second step, the ALJ found Plaintiff had severe impairments of "[t]raumatic injury to RLE, status post total right femoral and tibial replacement, DVT of RLE; DJD of the right knee; MDD; GAD; methamphetamine dependence, in reported omission; low back pain; headaches." *Id.* At the third step, the ALJ found these impairments were not *per se* disabling as Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the requirements of a listed impairment. AR 13.

At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work. AR 14. Specifically, Plaintiff could stand/walk for two hours and sit for six hours in an eight hour period, frequently balance, kneel, and crouch, and occasionally stoop, crawl, and climb. *Id.*

Additionally, Plaintiff was limited to simple and detailed work, no more than occasional interaction with coworkers and supervisors, and occasional contact with the public. *Id.*

At step five, relying on the VE's testimony, the ALJ determined Plaintiff could not perform her past relevant work. AR 17. Still relying on the VE testimony, the ALJ found Plaintiff could perform other jobs existing in significant numbers in the national economy, including office helper, mail clerk, and photocopier. AR 18. As a result, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from May 1, 2015, through the date of the decision. AR 19.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 404.981; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

## II. Issue Raised

Plaintiff raises three issues on appeal. First, Plaintiff contends the ALJ failed to properly consider the medical evidence of record and therefore, the RFC is not supported by substantial evidence. Doc. No. 17 ("Op. Br.") at 4-10. In her second and third issues, Plaintiff contends the ALJ's step five determinations are also not supported by substantial evidence. *Id.* at 10-15.

III. <u>General Legal Standards Guiding Judicial Review</u>

Judicial review of Defendant's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). Substantial evidence "means-and means only- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, __ U.S. __, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citations, quotations, and brackets omitted). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (citations omitted). While a court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, a court does not reweigh the evidence or substitute its own judgment for that of Defendant. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

IV.    Consideration of Medical Evidence & RFC

In her first issue on appeal, Plaintiff argues the ALJ failed to discuss uncontroverted and/or significantly probative evidence that conflicted with his findings. Op. Br. at 4-10. An ALJ is required to consider all relevant evidence in the record. Soc. Sec. R. 06–03p. It is well-established that an ALJ cannot "pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability," *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). While he is not required to discuss every piece of evidence in the record, it is clear that, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citations omitted); *see also Watts v. Berryhill*, 705 F. App'x 759, 762 (10th Cir. 2017) ("While the 'record must demonstrate the ALJ considered all of the evidence,' there is no requirement an ALJ 'discuss every piece of evidence.'" (citation omitted)). Finally, regarding opinion evidence, generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant

is given the least weight. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).[1]

A. Physical Impairments

Plaintiff contends the ALJ erred in his consideration of the opinion from the consultative examiner, Dr. Bryan Peck. Plaintiff asserts that although the ALJ granted his opinion great weight, the ALJ ignored or minimized Dr. Peck's positive findings. She further argues the agency reviewing experts also ignored Dr. Peck's probative findings. Plaintiff asserts the ALJ then relied heavily on the reviewing experts' opinions, though when determining the RFC, ultimately varied from them without explanation.

Dr. Peck examined Plaintiff on August 27, 2016. AR 779-86. Dr. Peck noted that Plaintiff's speed, stability, and safety were decreased as she displayed abnormal weightbearing on her left leg. AR 780. Dr. Peck further observed decreased passive range of motion in Plaintiff's back extension 15 degrees and back flexion 45 degrees. AR 780, 782, 785. He observed pain with back range of motion with flexion, extension, and lateral bending, as well as tenderness to palpation in the lower back at midline and paraspinal lumbar region. AR 780, 785. Dr. Peck also noted three

---

[1] The prioritizing of medical opinions applies to claims, such as Plaintiff's, filed prior to March 27, 2017. 20 C.F.R. § 416.927(c). For applications filed after March 27, 2017, 20 C.F.R. § 416.920c shall apply and prohibits deferring to any particular medical opinion.

centimeters differences in circumference between Plaintiff's right and left thighs, as well as six centimeters difference between Plaintiff's right and left calves. AR 785. Additionally, Plaintiff's straight leg raising was positive bilaterally. AR 780. Dr. Peck stated that Plaintiff's musculoskeletal examination was otherwise unremarkable and that upper and lower extremity strength was 5/5. *Id.* He found Plaintiff's upper and lower extremity range of motion and back and neck range of motion were normal with no pain on light palpation. AR 780, 782-84.

In the decision, the ALJ only specifically noted Dr. Peck's negative findings. AR 16.

> Upon consultative physical examination conducted on August 27, 2016, it was noted the most recent Doppler of her right lower extremity revealed no deep venous thrombus. Negative findings included full and equal upper and lower extremity strength and grip strength. Range of motion was normal in the upper and lower extremities, back and neck with no pain on light palpation. There was no swelling or deformity of the hands and good thumb opposition. Short-term memory was intact. The undersigned gives this opinion great weight. It is supported with findings upon examination and an explanation.

*Id.*

Based on the ALJ's fairly limited discussion of Dr. Peck's examination findings, Plaintiff contends the ALJ improperly ignored Dr. Peck's findings that did not support a finding of nondisability, picking and choosing those portions of the record that supported his conclusion. Defendant responds that "[t]he ALJ stated that he considered all of the evidence in the record." Doc. No. 21 at 6 (citing *Flaherty v.*

*Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2009) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.")). The Court acknowledges that if this were the end of the decision analysis, the extent of the ALJ's analysis might raise concern. However, the analysis does not end there and the decision must be considered in its entirety.

The state agency reviewing physicians reviewed the record, including Dr. Peck's opinion. AR 88, 123. In summarizing his examination, these physicians specifically noted many of Dr. Peck's positive findings. *Id.*

> 08/27/16: Claimant complained of continued right leg and back pain. The claimant had noted range of motion deficits in her back. She had spinal pain and tenderness. Positive SLR. DTRs were grossly unremarkable, except in her right knee. She had full range of motion in her extremities. Heel/toe walking was weak. Her gait demonstrated an abnormal weight bearing on the left leg due to a total femur and tibial replacement in 1998. No focal or sensory deficits note[d]. Grip strength was normal with good fine and gross manipulation. . . .

*Id.* After consideration of Dr. Peck's findings as well as the remainder of the record, the reviewing physicians concluded Plaintiff could stand/walk for two hours and sit for six hours in an eight hour period, frequently balance, kneel, and crouch, and occasionally stoop, crawl, and climb. AR 86-87, 121-22. As both parties acknowledge, the ALJ clearly granted these opinions great weight as he incorporated their conclusions into the RFC. AR 14, 86-87, 121-22.

Plaintiff argues, in conclusory fashion, that the reviewing experts also ignored probative findings from Dr. Peck. Op. Br. at 5. However, while the reviewing physicians did not recite every positive finding from Dr. Peck, in reaching their opinions on Plaintiff's physical limitations, they did set forth a reasonable summary of his findings, including both positive and negative findings. AR 86-88, 121-123. The ALJ ultimately incorporated their opinions into his decision. *Supra.*

Plaintiff's argument asks this Court to consider the same evidence clearly considered by the reviewing physicians and the ALJ and reach a different conclusion. However, such an approach would impermissibly require this Court to reweigh the evidence. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (recognizing that the court could not "now reweigh that evidence and substitute [its] judgment . . . ."). *See also Alarid v. Colvin*, 590 F. App'x 789, 795 (10th Cir. 2014) ("In citing what he contends is contrary evidence [to the ALJ's conclusion regarding the severity of the claimant's impairments], Mr. Alarid is asking us to reweigh the evidence, which we cannot do."); *see also, cf., Lately v. Colvin*, 560 F. App'x 751, 754 (10th Cir. 2014) (rejecting the plaintiff's attempt to have the court reweigh the evidence); *Taylor v. Astrue*, 266 F . App'x 771, 777 (10th Cir. 2008) (recognizing that case was not "clear-cut" and that the claimant "certainly adduced evidence consistent with [treating physician's] functional limitations" but the ALJ complied with the regulations in weighing the treating physician opinion, his decision to reject

that opinion was supported by sufficient evidence and "it is not the province of th[e] court to reweigh the evidence"). Therefore, Plaintiff's claim of error is denied.

B. Mental Limitations

Plaintiff makes a similar argument with regard to the alleged lack of mental limitations in the RFC. She asserts the ALJ ignored the positive findings of the consultative examiner, Stephanie Crall, Ph.D. Op. Br. at 7-10. She further argues the agency reviewing experts, upon whom the ALJ apparently relied, also ignored Dr. Crall's probative findings. *Id.*

Dr. Crall examined Plaintiff on August 8, 2016. AR 707-11. Dr. Crall's findings were largely negative. AR 710. She found that Plaintiff's functional memory was intact and her general fund of knowledge was average. *Id.* Dr. Crall concluded that Plaintiff suffers from moderate major depressive disorder, chronic posttraumatic stress disorder ("PTSD"), and a history of amphetamine use disorder. AR 711. She further explained:

> In the opinion of this evaluator, [Plaintiff]'s ability to engage in work-related mental activities, such as sustaining attention, understanding, and remembering and to persist at such activities was likely adequate for simple and some complex tasks. In the opinion of this evaluator, depression, posttraumatic stress, and chronic pain likely impaired her ability to adapt to a competitive work environment, though.

*Id.* Dr. Crall also stated that Plaintiff's conditions were not likely to change within the following twelve months. *Id.*

In his decision, the ALJ accurately summarized Dr. Crall's findings. AR 16. The only positive finding regarding limitations that the ALJ did not specifically state, and the only one Dr. Crall noted, was an impairment in Plaintiff's ability to adapt to a competitive work environment. AR 16, 710-11. Plaintiff complains that this omission is evidence the ALJ picked and chose only those portions of the examination that supported a finding of nondisability.[2]

Based on a review of the record, the first state reviewing examiner concluded:

> The claimant can perform simple and some complex tasks. The claimant can make decisions and avoid common hazards in a work environment. The claimant can maintain an appropriate pace in a work setting. The claimant can maintain superficial relationships with coworkers and supervisors. The claimant should only have superficial contact with the general public.

AR 90. The reviewing examiner also indicated Plaintiff did not have any "adaptation limitations." Id.

---

[2] Plaintiff also complains the ALJ did not discuss Dr. Crall's finding that Plaintiff suffered from chronic PTSD or that she was socially isolated. Op. Br. at 7. As explained, Dr. Crall stated that Plaintiff suffered from not only chronic PTSD but also major depressive disorder and a history of amphetamine use. AR 711. It is unclear why Plaintiff only complains about the AJL's failure to note one diagnosis. Regardless, each of these are conditions or circumstances and not findings or opinion regarding Plaintiff's mental limitations. Additionally, Plaintiff also complains the ALJ did not discuss that she had "difficulty solving some simple math problems . . . ." Op. Br. at 7. In asserting this argument, Plaintiff is picking and choosing portions of the record that support her position on appeal. Dr. Crall's examination record shows that Plaintiff did have some difficulties solving some simple math problems and no difficulties solving others. AR 710. As the ALJ accurately stated, based on her examination overall, Dr. Crall concluded Plaintiff's general fund of knowledge was average. *Id.*

The second reviewing examiner summarized Dr. Crall's findings as follows:

> [Plaintiff's] mood was depressed. Her speech was logical, goal-directed, and fully intelligible. No difficulties with posture, gait, or other motor behaviors were observed. Thought processes were adequate. No abnormal content noted, but she did admit to suicidal ideations. She had a history of one prior attempt and a prior psychiatric hospitalization. She demonstrated adequate general knowledge. Memory was intact. She was able to perform serial 3's and simple arithmetic problems, but did make a few mistakes. She noted some social isolation with regular contact with only her fiancé and his sister. She admitted to a past history of substance abuse and domestic violence. Judgment was adequate. Dxs: Major Depressive Disorder, Moderate; [PTSD], Chronic; Amphetamine Use Disorder (by hx).

AR 101-02. Based on a review of the overall record, the second reviewing examiner's conclusions regarding Plaintiff's mental RFC mirrored that of the initial examiner, including a conclusion that Plaintiff did not have any "adaptation limitations." AR 108.

Plaintiff complains that within the reviewing examiners' opinions, they contradict themselves by indicating Plaintiff has mild limitations in adapting and no limitations in adapting. Op. Br. at 9 (citing AR 76, 90, 101, 108, 118, 125). To the extent mild limitations and no limitations conflict, this conflict does not undermine the ALJ's decision and certainly does not indicate his conclusions are not supported by substantial evidence. Moreover, the portions of the reviewing examiners' opinions wherein they stated that Plaintiff had mild limitations in her ability to "adapt or manage oneself" related to step three of the sequential evaluation process, regarding whether Plaintiff's impairments were severe. AR 101, 118. Whereas, the

opinions finding that Plaintiff had no limitations in "adaptation limitations" related to Plaintiff's RFC. AR 76, 90, 108, 125. These differences do not represent an internal inconsistency warranting reversal. *See Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) (holding that an "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.").

Plaintiff also complains that the reviewing examiners did not specifically mention Dr. Crall's finding that Plaintiff could not adapt to a competitive work environment. Op. Br. at 9. However, Dr. Crall stated that Plaintiff's conditions "likely" impaired her ability to adapt to a competitive work environment. AR 711. This does not mandate a finding that Plaintiff had said limitation. The reviewing physicians, who clearly considered Dr. Crall's examination and findings, concluded otherwise. Plaintiff seeks a reversal based on a failure to specifically mention an equivocal finding by a consultative examiner. More specifically, Plaintiff is again asking the Court to consider the same evidence before the reviewing physicians and ALJ and reach a different conclusion. As previously established, such an approach is not permissible. *See supra.*

Finally, Plaintiff argues the ALJ erred by concluding that she can perform work that involves occasional contact with coworkers, supervisors, and the public, whereas the reviewing examiners concluded Plaintiff could only have superficial

contact with the same. Op. Br. at 9. When reviewing the decision as a whole, the Court finds it is unnecessary to resolve this issue. As previously explained, the ALJ, relying on the VE's testimony, found that Plaintiff could perform the jobs of office helper, mail clerk, and photocopier. AR 18. Each of these jobs is categorized as unskilled and do not require more than superficial contact with supervisors, coworkers, or the public. *See Dictionary of Occupational Titles* ("DOT"), 209.687-026 (mail clerk), 1991 WL 671813; DOT 207.685-014[3] (photocopier), 1991 WL 671745; DOT 239.567-010 (office helper), 1991 WL 672232.

Consequently, the Court concludes that inclusion in the RFC of the reviewing physicians' finding that Plaintiff should be limited to superficial contact with supervisors, coworkers, and the public would not negate her ability to perform the jobs of office helper, mail clerk, and photocopier. Therefore, presuming without deciding that the ALJ erred by not including these limitations in the RFC, any such error was harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (stating ALJ's error is harmless "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable

---

[3] In his decision, the ALJ mistakenly referred to DOT 267.685-014 in referencing the DOT listing for photocopier. AR 18. However, during the administrative hearing, the VE referenced the correct DOT listing and it is the listing that corresponds with the job of photocopier. DOT 207.685-014 (photocopier), 1991 WL 671745.

administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").[4]

V.    Step Five Determinations

In her next issue on appeal, Plaintiff contends she cannot perform the job of mail clerk because it has a reasoning level of three. Op. Br. at 11-12. Plaintiff's reasoning in support of this argument is dubious. She asserts that she cannot perform a job at a reasoning level of three because the VE found that she could not perform her past relevant work that had this reasoning level. However, each of Plaintiff's past relevant jobs fell under light exertion and the RFC precluded a full range of light work. Moreover, Plaintiff's past relevant work as waitress and customer service representative requires more walking, standing, and public interaction than the RFC permits. AR 59-60; DOT 311.477-030, 1991 WL 672688 (waitress); DOT 279.357-054, 1991 WL 672548 (salesperson, general merchandise). These are presumably the same reasons the VE testified that Plaintiff could not perform her past relevant work as a fast foods worker, although it is categorized as reasoning level 2 but requires more standing, walking, and public interaction than the RFC. AR 59-60; DOT 311.472-010, 1991 WL 672682. The VE also testified that Plaintiff could not

_____

[4] Plaintiff also states, "There is additional variation between the ALJ's RFC for 'simple and detailed' work and the reviewers' opinion she can perform 'simple and some complex' work." Op. Br. at 9 (citation omitted). It is not clear whether Plaintiff intended to raise this as an error on appeal. Nevertheless, because the ALJ's RFC is a stricter limitation in this regard than that stated by the reviewers, any such error is harmless. *See, supra.*

perform her past relevant work as housekeeper, also categorized as reasoning level 2 but requiring more standing and walking than the RFC permits. AR 59-60; DOT 323.687-014, 1991 WL 672783. Plaintiff has not provided any basis to find that the ALJ erred in determining that she can perform the job of mail clerk with a reasoning level of three.

Additionally, Plaintiff argues that the VE's testimony regarding the number of jobs available, *i.e.,* 23,000, means that "there are an insignificant number of jobs left for consideration at a Step Five decision." Op. Br. at 14. Contrary to Plaintiff's assertion, the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number'" and has specifically rejected such an approach. *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). The Tenth Circuit in *Trimiar* did find that an ALJ must consider several factors in determining that the number of jobs a claimant can do exist in significant numbers, including "the level of claimant's disability; the reliability of the [VE]'s testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; [and] the types and availability of such work." *Id.* (quotations omitted). An ALJ's finding is sufficient if the record supports a conclusion that the "ALJ used a common sense approach in weighing the statutory language as applied to a particular claimant's factual situation." *Johnson v. Colvin*,

No. CIV-13-736-W, 2014 WL 4215557, at *3 (W.D. Okla. Aug. 15, 2014) (quotations omitted).

Nothing in the record suggests the ALJ did not fully consider Plaintiff's factual situation in making his step-five findings. Additionally, given the imprecise nature of this analysis, this Court is unwilling to find that 23,000 represents an insignificant number of jobs. *See Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (implying that 11,000 hand packager jobs in the national economy could be relied upon by the ALJ as substantial evidence to support a finding of non-disability).

Finally, Plaintiff asserts that presuming the mail clerk position should not be eliminated, "the total number of the three jobs listed is only 23,000 and is based upon suspect testimony from the [VE], who gave eroded numbers without an explanation as to how those numbers were formulated." Op. Br. at 15. During the hearing, the VE testified that an individual with Plaintiff's ultimate RFC could perform the job of office helper and that there are 29,663 such jobs available nationally, however, he "would erode those numbers down to 7,000 because of the limitation of standing and walking only two hours a day." AR 60. He said the same about the job of mail clerk, explaining that there are 46,169 mail clerk jobs nationally, but he would erode those numbers down to 9,000 due to the same limitation. *Id*. Finally, the VE testified that there were 28,304 photocopier jobs nationally, but he would erode those down to 7,000 also due to the standing and walking limitation. *Id*.

Relying on *Biestek*, Plaintiff complains that it was error for the ALJ to accept the VE's numbers where the VE did not explain his methodology for determining the same. Op. Br. at 12. However, *Biestek* is not only distinguishable but also not particularly helpful to Plaintiff's position. In *Biestek*, during the administrative hearing and following the VE's testimony on the number of jobs available that the plaintiff could perform, the plaintiff's counsel asked the VE for her underlying data supporting the same. *Id.* at 1153. The VE refused to provide it because it included, *inter alia*, her "own individual labor market surveys" that were part of her client files. *Id.* Following the ALJ's decision granting in part and denying in part the plaintiff's application, the plaintiff appealed, arguing that the VE's testimony could not constitute substantial evidence supporting the ALJ's decision because she refused, upon request, to submit her underlying data. *Id.* The plaintiff also clarified his argument, explaining that the "evidentiary problem arises from the expert's refusal of a demand, not from the data's absence alone. In his words, the testimony 'can constitute substantial evidence if unchallenged, but not if challenged.'" *Id.* at 1155 (citation omitted).

The Supreme Court ultimately rejected this argument, explaining:

Where Biestek goes wrong, at bottom, is in pressing for a categorical rule, applying to every case in which a vocational expert refuses a request for underlying data. Sometimes an expert's withholding of such data, when combined with other aspects of the record, will prevent her testimony from qualifying as substantial evidence. That would be so, for example, if the expert has no good reason to keep the data private

and her testimony lacks other markers of reliability. But sometimes the reservation of data will have no such effect. Even though the applicant might wish for the data, the expert's testimony still will clear (even handily so) the more-than-a-mere-scintilla threshold. The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case. *See, e.g., Perales*, 402 U.S. at 399, 410 [] (rejecting a categorical rule pertaining to the substantiality of medical reports in a disability hearing). It takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record. And in so doing, it defers to the presiding ALJ, who has seen the hearing up close.

*Id.* at 1157.

It is unclear why Plaintiff attempts to rely on *Biestek* to support his argument in the current case. The plaintiff in *Biestek* specifically argued the VE's testimony should be considered unreliable only if the VE refused, upon request, to reveal her methodology. Here, Plaintiff's counsel made no such request, or even an inquiry, during the administrative hearing. Regardless, the Supreme Court rejected the bright line rule, explaining that such determinations must be made on a case by case basis. Plaintiff has not presented any evidence or basis to infer that the VE's testimony regarding the number of jobs available is inaccurate or unreliable.

Plaintiff also relies on *Rennaker*[5] *v. Saul*, 820 F. App'x 474 (7th Cir. 2020), in which the court held that the substantial evidence standard and a *pro se* claimant requires an ALJ to inquire as to a VE's methodology and basis for determining the

_____

[5] In the Opening Brief, Plaintiff identifies the plaintiff in this case as "Reddicker." Op. Br. at 12. However, the citation corresponds with the *Rennaker* decision and appears to contain the reasoning upon which Plaintiff attempts to rely.

number of jobs available. *Id.* at 478-79. First, the Court notes once again that Plaintiff was not unrepresented in her administrative hearing. Plaintiff's counsel was present during the administrative hearing and never made any inquiry regarding the basis for the VE's determination regarding the number of jobs available. AR 60-61. Indeed, the ALJ specifically asked Plaintiff's counsel if he wanted to question the VE and Plaintiff's counsel declined to do so. AR 61. Second, *Rennaker* is a Seventh Circuit decision and not binding on this Court.[6] Moreover, it is entirely unclear whether the Seventh Circuit would impose a bright line rule requiring an ALJ to inquire as to a VE's methodology if the claimant is represented, as Plaintiff was in this case.

In any event, Plaintiff's argument would require this Court to hold that a VE's testimony is inherently unreliable unless the VE explains his methodology for determining the number of jobs available. Plaintiff has not presented any Tenth Circuit authority supporting such a holding, nor any evidence that the VE's testimony in this case is unreliable. In fact, despite having the opportunity to do so, at no point during the administrative hearing did Plaintiff's attorney inquire as to the VE's methodology. AR 58-61. Instead, Plaintiff's counsel declined to ask the VE

---

[6] The Court notes that in *Biestek,* the Court specifically referenced the Seventh Circuit's previous adoption of a categorical rule that a VE's testimony was not substantial if the VE had declined a claimant's request to provide supporting data. *Biestek*, 139 S.Ct. at 1153-54. The Court noted that other Circuits had declined to adopt such a rule and the Supreme Court rejected it outright. *Id.* at 1154-57.

any questions and without support in fact or law, asked this Court to reverse the ALJ's decision. The Court declines that invitation. *See Jacquez v. Berryhill*, No. CIV-16-282 LAM-GJF, 2017 WL 2509922, at *10 (D.N.M. March 27, 2017) (denying the plaintiff's challenge on appeal to the VE's testimony regarding the number of jobs available where during the administrative hearing the plaintiff's counsel "not only failed to question [the] VE [] regarding the job numbers she gave or their origin, he offered no objection to her testimony whatsoever" and explaining that where counsel "consciously chooses not to offer that challenge, the ALJ does not have a duty to interrogate the VE regarding her methods.") (citing *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994) (rejecting the plaintiff's challenge to a VE's testimony based on counsel's statement during the administrative hearing that "he had no objections to the testimony and had nothing further for the ALJ's consideration," and concluding that the plaintiff "waived her right to cross-examine the witness."; *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993) (noting that while representation by counsel at the administrative hearing does not relieve the ALJ of his duty to develop the record, it does lessen that duty)).

VI.  <u>Conclusion</u>

    Based on the foregoing analysis, the decision of the Commissioner is affirmed. Judgment will issue accordingly.

ENTERED this __14th__ day of July , 2021.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE